IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 10-03099-01-CR-S-ODS |
| CORY JOHNSON and ) | |
| KIRBY JOHNSON, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendants have filed a Motion to Suppress in which they allege that all evidence seized at an apartment should be suppressed [Docs. # 14 and 35]. The United States filed its response [Doc. #22]. The matter was set for an evidentiary hearing, which was held before the undersigned on April 22, 2011. Defendant Cory Johnson was present with counsel, Shane P. Cantin, and defendant Kirby Johnson was represented by Robert L. Lewis. The United States was represented by Randall D. Eggert, Assistant United States Attorney. After the hearing, defendant Kirby Johnson filed a supplemental motion to suppress [Doc. # 42-1].

The government's first witness was Trish Franklin, the property manager at Forest Park Apartments. On March 10, 2010, she was conducting a routine apartment inspection, which she does four times a year. The inspection includes checking smoke alarms and for bugs, and otherwise checking out the condition of the unit. She is required to give the residents of the apartments 24-hour notice, which she did in this case. She conducted the inspection at Unit 02, rented by Cynthia

1

Johnson, defendants' mother. No one was home, so Ms. Franklin, her assistant, and two maintenance people let themselves in. They divided up the inspection, and she went to the basement. On the basement stairs, she tripped and kicked a box on the second step. The box rolled down the steps, and she could observe its contents. She saw "some marijuana, some little baggies, a scale and a white brick." [Tr. 4]. She didn't really recall what the marijuana was contained in, but she recognized it to be marijuana. She ran back upstairs, and told the maintenance man to call 911 "because we had found something that didn't look right." [Tr. 5]. The police arrived in about three or four minutes. She told the officer that there was a box in the basement that they needed to look at because it contained what they thought were drugs. The door was open, as they were still in the unit. The officer went inside the apartment to the basement, although they did not accompany him. He came out with the box. Additional officers arrived at the apartment complex, and eventually, law enforcement obtained a search warrant. Ms. Franklin testified that she conducts this kind of search to ensure that the apartment is well-maintained, and not at the request of law enforcement.

On cross-examination, the witness testified that this is the first time she has ever called the police as a result of an apartment inspection in her five years as manager. Ms. Franklin, according to the police report, first saw a baggie of marijuana on the kitchen floor. She didn't pick it up, and didn't call the police at that time. They just continued to conduct the inspection. Going to the basement, she tripped over a black shoe box and it fell down the stairs. She noticed a large bag of marijuana and immediately called the police. She didn't remember if she saw a Wal-Mart plastic bag in the shoe box, and did not recall seeing a Wal-Mart bag containing a plastic bag, containing a third bag with an off-white substance inside. She did see a white brick inside the shoe box; it was a white hard substance, about 4 inches by 2 or 3 inches. The brick was in the box, "all stuffed

2

together with all the other items." [Tr. 10]. Ms. Franklin testified that she did not recall that the white brick was covered with any bag or anything else. She stated that she didn't "remember exactly if I called it a brick at that time or not." [Tr. 11]. "I just said that there was a lot of drugs in the box, you know, something along those lines." [Id.]. She did not recall saying anything about opening a Wal-Mart plastic sack and there being something inside it.

On further cross-examination, Ms. Franklin testified that the four of them stayed outside the unit until the police arrived. She testified that when she first went inside the apartment, no one else was in there. She is sure that no one else arrived at the apartment or went in or out while they were waiting for the police to come. Ms. Johnson had been leasing the apartment since 2001. Before March of 2010, she knew of Cory Johnson, and knew he was Cynthia's son. Cory Johnson had asked her a few months previously about whether he could be added to the lease, and she told him he could not. She had seen him visiting occasionally, but saw no evidence that he was living there. She had conducted quarterly inspections of this apartment since she had worked there.

The government next called Officer Michael Lunsford of the Springfield Police Department, who was dispatched to the apartment on the day in question because the property manager had located some suspected drugs in an apartment. Ms. Franklin told him that she was conducting an inspection, and found what she believed to be marijuana in Apartment 02. He went inside the apartment, and located a small baggie of suspected marijuana by the kitchen table. Ms. Franklin told him she'd found some more drugs when she went downstairs. She said that she'd kicked over a shoe box that fell down the stairs, and another larger baggie of marijuana fell out. After locating the contraband, he did a cursory search of the apartment to ensure that no one else was inside. After finding the marijuana in the box, he seized it, and secured the evidence and the apartment. He called

3

additional officers to the scene, one of whom was Officer Wes Friebe. He works with the Narcotics Investigation Team, and field-tested the suspected cocaine. Officer Friebe then secured a search warrant for the apartment. No additional evidence was located pursuant to the search warrant.

On cross-examination, Officer Lunsford testified that Ms. Franklin did not say anything about finding a white brick. The officer testified that he found it located in the box with the larger baggie of marijuana. It was inside a white grocery bag inside the shoe box. He had to open up the plastic bag to see the off-white substance. Officer Lunsford agreed that another officer's report indicated that the plastic bag contained another plastic bag, which contained the off-white substance. He opened all the bags. Ms. Franklin had not told him that she'd looked inside the Wal-Mart bag. His report does not indicate that she told him anything about this. He acknowledged that he did not have a search warrant when he looked inside the plastic bag.

On further cross-examination, before other officers arrived on the scene with a search warrant, Officer Lunsford testified that he stayed at the apartment. When he arrived and talked to Ms. Franklin, she said she and her maintenance person had stayed at the apartment waiting for the police, and that no one had come in or out or was in the apartment.

On re-cross examination, Officer Lunsford testified that there was marijuana in the shoe box along with what was later determined to be crack cocaine. Regarding his belief that someone might have been hiding in the apartment, it is his experience that this happens a lot, despite it being reported that no one was in there. Therefore, he conducted the sweep of the apartment to ensure that it was unoccupied. Officer Lunsford testified that although Ms. Franklin never told him that there was a white brick in the shoe box, she did tell him there was marijuana in it. When she kicked the box down the stairs, it fell out and the box fell open.

4

Defendants assert that the warrantless entry by the police officer into the apartment was in violation of their Fourth Amendment rights pursuant to Chapman v. United States, 365 U.S. 610, 615 (1961), and Georgia v. Randolph, 547 U.S. 103, 111 (2006). It is submitted that the landlord could not give consent to a warrantless search of the apartment. Defendants contend that there was no exigency in this case. It is further asserted that their Fourth Amendment rights were violated because the police officers seized the shoe box containing crack cocaine, and field-tested the substance without a search warrant.

In his supplemental suggestions, defendant Kirby Johnson contends that the crack cocaine should be suppressed because Officer Lunsford's actions in searching the shoe box and opening the plastic bags to reveal the drug exceeded what Ms. Franklin had observed in her search.

It is the government's position that the landlord's routine inspection did not violate defendants' rights because it was not undertaken at the request or awareness of the government. It is asserted that because Ms. Franklin was a private party acting without governmental involvement or knowledge, her inspection of the apartment, the marijuana baggie, and the contents of the shoe box did not implicate any Fourth Amendment right. It is further asserted that the private search destroyed any legitimate expectation of privacy that defendants might have had. The government submits that Officer Lunsford's subsequent entry into the apartment and inspection of the shoe box and its contents did not constitute an illegal search because it did not exceed the scope of the private search.

"The Fourth Amendment prohibits unreasonable searches and seizures. Absent some well-settled exception, unconsented warrantless searches are unreasonable." United States v. Miller, 152 F.3d 813, 815 (8th Cir.1998). The Fourth Amendment, however, does not extend to

private searches that are neither instigated by nor performed on behalf of a governmental entity. Id. "[T]he legality of later government intrusions 'must be tested by the degree to which they exceeded the scope of the private search.' " Id. (quoting United States v. Jacobsen, 466 U.S. 109, 115 (1984)). The Eighth Circuit has recently reiterated this rule. United States v. Starr, 533 F.3d 985, 998 (8th Cir. 2008). The government may intrude on an individual's privacy expectations without violating the Fourth Amendment, provided the government intrusion goes no further than the private search. Id. at 995. ("[T]o be a Fourth Amendment search, a governmental intrusion must infringe on a legitimate expectation of privacy. Because a private search frustrates such an expectation, an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes.") Id. (citations omitted).

Having fully reviewed the record, the Court finds that it is clear that the property manager acted independently in her search of the apartment. This is not a third-party consent case, but rather, the proper inquiry is whether a "Fourth Amendment search has taken place at all." United States v. Miller, 152 F.3d 813, 815 (8th Cir. 1998). Therefore, the question is whether Ms. Franklin was acting with or at the request of the government during the initial private search.

The credible evidence adduced at the hearing was that Ms. Franklin was the property manager, a private actor, and perfectly within her rights in conducting the inspection. Ms. Franklin, a completely neutral witness, testified convincingly that she entered the residence that day because she was conducting a quarterly routine inspection. Further, she testified that the residents of the apartments were given at least 24-hour notice. There was clearly no governmental involvement in her private search. After she called the police, Ms. Franklin and

her co-workers remained at the apartment to ensure that no one went in.  There was no testimony that she acted beyond her official duty as property manager in doing so.   Once the police arrived, moreover, other than allowing Officer Lunsford into the apartment, she took no part in the search that he conducted.  It is beyond dispute in this case that Ms. Franklin acted, at all times, in the role of property manager, performing her duties, in a private capacity.

Defendants contend that the crack cocaine should be suppressed because the search of the drugs in the bags exceeded what Ms. Franklin had found, and had not been observed by her. While Ms. Franklin testified that she did not open any bags and that she did not remember telling Officer Lunsford about the white brick substance, based on her testimony at the hearing, it is clear that she observed the brick of crack cocaine, and was able to describe what she saw in some detail. From Ms. Franklin's testimony, the size and shape were obvious.   She testified that when she tripped on the shoe box, it rolled down the steps, the contents spilled out, and she could observe what the shoe box contained.  She saw "some marijuana, some little baggies, a scale and a white brick." [Tr. 4].  She also indicated that the brick was stuffed in the shoe box together with everything else, including the large baggie of marijuana and the scales.

Based on the credible testimony adduced at the hearing, the search by Officer Lunsford did not exceed the limits of the private search by Ms. Franklin.  She saw the box and its contents. The officer examined the spilled contents of the box.  Despite the fact that the white brick was apparently wrapped in some baggies, the crack cocaine was part of the contents of the shoe box, along with other drugs and drug paraphernalia.  The shoe box contained evidence of illegal drugs, and the officer's search of the already compromised contents of that box did not exceed the scope of the private search.  Unwrapping the crack cocaine did not violate defendants rights.

7

They did not retain an expectation of privacy in the shoe box and its contents, as that expectation was compromised by the private search and subsequent discovery by Ms. Franklin of drugs in the shoe box. See, e.g., United States v. Bowman, 907 F.2d 63, 64-65 (8th Cir. 1990); United States v. Oliver, 630 F.3d 397, 406 (5th Cir. 2011).

Defendants rely on United States v. Rouse , 148 F.3d 1040, 1041-42 (8th Cir. 1998) for the proposition that the officers did not have any previous information about the white brick, and that it was not an object to which they had had their expectations of privacy frustrated. The government argues that the officer inspected the contents of the shoe box, which Ms. Franklin had already observed when she kicked it over on the basement stairs.

Defendants' reliance on Rouse is misplaced, given that the Eighth Circuit specifically found in that case that the items were not ones about which the police officers had any previous information, and were therefore not items for which the defendant had had his expectations of privacy frustrated, nor were they in plain view. By contrast, the officer in this case had previous information that the property manager had discovered drugs in the shoe box, and that the contents had spilled out, rendering them at least arguably in plain view. Having reviewed relevant case law, the Court believes that unwrapping the brick of crack cocaine that was sandwiched in with a baggie of marijuana and scales in the shoe box does not implicate the Fourth Amendment, given that the shoe box itself no longer supported an expectation of privacy. See, e.g., United States v. Bowman, 907 F.2d 63, 64-65 (8th Cir. 1990); United States v. Runyan, 275 F.3d 449, 463-64 (5th Cir. 2001).

There is nothing in the evidence to suggest that Officer Lunsford's entry into the property and his observation of the marijuana and inspection of the contents of the box, which

8

had spilled open when Ms. Franklin tripped on it, exceeded the scope of the private search she conducted. It should be noted, moreover, that a search warrant was secured by Officer Friebe before any further search of the apartment occurred. Additionally, the fact that Officer Lunsford conducted a cursory sweep of the apartment to ensure that no one was hiding there for safety reasons was not an unconstitutional extension of Ms. Franklin's private search.

The fact that Ms. Franklin acted independently and in a private capacity during her initial search frustrated any legitimate expectation of privacy defendants had in the marijuana, and in shoe box and its contents. The government intrusion in this case did not exceed the scope of the private search. Jacobsen, 466 U.S. at 115; Starr, 533 F.3d at 998. The subsequent seizure of the crack cocaine did not violate any Fourth Amendment right. Any privacy interest defendants might assert was breached by Ms. Franklin, who was not acting as a law enforcement officer, nor at the behest of law enforcement. The Court finds, therefore, that no Fourth Amendment violation occurred.

Based on the foregoing, it must be recommended that defendants' Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendants' Motion To Suppress Evidence be denied.

     /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 5/10/11